<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUPREME OIL COMPANY, INC. d/b/a/ ADMIRATION FOODS, | **Civil Action No. 15-cv-2344 (SRC)(CLW)** |
| Plaintiff/Counterdefendant, | |
| v. | **OPINION** |
| MASS POLYMERS CORPORATION, | |
| Defendant/Counterclaimant. | |
| MASS POLYMERS CORPORATION, | |
| Third-Party Plaintiff/Counter Defendant, | |
| v. | |
| DONALD O'SULLIVAN, | |
| Third-Party Defendant/Counterclaimant. | |

**CHESLER**, <u>District Judge</u>

This matter comes before the Court upon two motions: (1) Defendant/Counterclaimant/ Third-Party Plaintiff Mass Polymers Corporation's ("MPC") motion for partial summary judgment on Counts I, II, III, IV, V, & VI of MPC's Counterclaim [Docket Entry 23]; and (2) MPC's motion to dismiss Counts I, II, & III of Third-Party Defendant/Counterclaimant Donald O'Sullivan's ("O'Sullivan") Counterclaim [Docket Entry 19]. Plaintiff/Counterdefendant Supreme Oil Company, Inc. d/b/a Admiration Foods ("Supreme") has opposed the motion for partial summary judgment, and O'Sullivan has opposed the motion to dismiss. The Court has

1

considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny MPC's motion for partial summary judgment, without prejudice. The Court will grant in part and deny in part MPC's motion to dismiss O'Sullivan's counterclaims.

I.     BACKGROUND

The allegations recited below are taken from the various pleadings of the parties. This case arises from disputes between Supreme, a supplier of vegetable oil-related products, and MPC, a distributor of resin products. (Compl. ¶¶ 1, 9, 11.) Supreme is a Delaware corporation with its principal place of business in New Jersey, and MPC is a Massachusetts corporation with its principal place of business in Massachusetts. (Compl. ¶¶ 4-5.) Supreme purchases resin from distributors, such as MPC, to make plastic containers for its products. (Compl. ¶ 10.) Around October 2013, MPC salesperson O'Sullivan began selling resin to Supreme. (Compl. ¶¶ 13-14.) O'Sullivan represented to Supreme that MPC could provide generic prime resin of equivalent quality to the resin Supreme had been ordering, from the same reactor source, at a discounted price. (*Id.*) Supreme alleges that, on occasion, MPC supplied Supreme with lower quality, less expensive, non-conforming generic prime resin. (Compl. ¶¶ 16-19.) Furthermore, MPC attempted to conceal from Supreme that it was receiving inferior resin. (*Id.*) Supreme began to have difficulties processing the resin it ordered and received from MPC, and requested certificates of analysis for this resin from MPC. (Compl. ¶¶ 20-21.) MPC initially produced certificates of analysis created by MPC itself, and then finally gave Supreme documentation from the original resin producer, showing that the resin Supreme had received was in fact inferior to what MPC had promised, and that the resin was sourced from different reactors than Supreme had been promised. (Compl. ¶¶ 22-25.) MPC filed a counterclaim alleging Supreme's

2

failure to pay MPC for four railcars and one truckload of resin, totaling $584,759.95 in unpaid invoices and purchase orders. (MPC Countercl. ¶¶ 38, 42.)

MPC also brought a third-party Complaint against O'Sullivan, a former MPC salesperson who lived and worked in New Hampshire. (Third-Party Compl. ¶¶ 5, 13-16; O'Sullivan Countercl. ¶ 2.) O'Sullivan had serviced Supreme's resin needs while working for his prior employer, and he brought Supreme's generic prime resin business with him when he started work with MPC. (Compl. ¶ 12; Third-Party Compl. ¶ 7.) From September 2013 to March 2015, O'Sullivan was MPC's sales representative responsible for all sales and shipments of generic prime resin from MPC to Supreme. (Third-Party Compl. ¶ 9.) MPC alleges that O'Sullivan and Supreme coordinated O'Sullivan's departure from MPC, so that Supreme would receive four railcars and one truckload of generic prime resin from MPC at the same time O'Sullivan left his employment at MPC. (Third-Party Compl. ¶ 14.) Furthermore, MPC alleges that O'Sullivan ordered, on behalf of Supreme, two additional railcars of generic prime resin for delivery at Supreme's New Jersey plant, after Supreme alleged that it had problems with a railcar of resin MPC had delivered to Supreme. (Third-Party Compl. ¶ 15.) MPC alleges that Supreme had no intention of paying for the resin it ordered in these shipments. (Third-Party Compl. ¶¶ 15-16.) O'Sullivan filed a counterclaim alleging that MPC employees Vice President Stephen Dazzo ("Dazzo") and Business Manager Joseph Mysza ("Mysza") provided O'Sullivan with false data sheets related to the resins he sold to Supreme. (O'Sullivan Countercl. ¶¶ 5, 13). O'Sullivan also alleges that Dazzo instructed O'Sullivan to hide from Supreme information about the origin of some of the resin O'Sullivan sold to Supreme, and furthermore that Dazzo ordered O'Sullivan to alter certificates of analysis related to resin shipped to Supreme's Alabama plant. (O'Sullivan Countercl. ¶¶ 12-14.) O'Sullivan refused to do so, and resigned on March 14, 2015. (O'Sullivan

Countercl. ¶ 15.) Related to these events, O'Sullivan has brought counterclaims for constructive discharge, a violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 *et seq.*, and for wrongful discharge in violation of public policy. (O'Sullivan Countercl. ¶¶ 16-26.)

## II. LEGAL STANDARDS

### a. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

4

court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### b. MOTION TO DISMISS UNDER RULE 12(B)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

5

to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

Factual allegations must be well-pleaded to give rise to an entitlement to relief:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

### III. ANALYSIS

#### a. MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court concludes that it would be premature to grant partial summary judgment on Counts I through VI of MPC's Counterclaim, as the Court has limited evidence on the record on which to make its ruling at this stage of the case. "[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.' This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). MPC moved for summary judgment more than five months before the originally scheduled end date for discovery, which this Court set for January 15, 2016 [Docket Entry 21]. The end of fact discovery has subsequently been moved to March 31, 2016, and the parties are still actively engaged in the discovery process to this date [Docket Entry 57].

Furthermore, the Court notes that Supreme submitted a Rule 56(d) affidavit, outlining in detail the discovery it sought to oppose this motion [Docket Entry 35-3]. Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). If a party opposing summary judgment files a Rule 56(d) affidavit that specifically addresses the requirements of Rule 56(d), "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984) (quoting *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977)). Given that Supreme has submitted a detailed Rule 56(d) affidavit with its opposition to this motion [Docket Entries 26, 28, 35-3], and that the documents Supreme has referenced are not in the record before the Court at this time, this motion for partial summary judgment is premature. *See Sames*, 732 F.2d at 51-52. Whether material issues of fact exist pertaining to the contractual relationship between the companies and the alleged actions of the companies cannot be decided until the parties have had an opportunity to complete discovery on the contested issues. *See Velez v. Pittman*, No. 09-1418, 2010 WL 2516513, at *2 (D.N.J. June 14, 2010) (citing *Harvey v Campbell*, No. 06-1891, 2007 WL 2893193, at *3 (D.N.J. Sept. 28, 2007)). The Court therefore will deny MPC's motion for partial summary judgment on Counts I through VI of MPC's Counterclaim, without prejudice to renew at a later date.

### b. MOTION TO DISMISS THIRD-PARTY DEFENDANT O'SULLIVAN'S COUNTERCLAIMS

O'Sullivan's counterclaims assert constructive discharge, a violation of CEPA, N.J.S.A. § 34:19-1 *et seq.*, and a common law claim for wrongful discharge in violation of public policy (*Pierce*). Although Count II alleges a violation under CEPA and Count III is a constitutional claim, both of these claims incorporate O'Sullivan's allegation that he was constructively discharged from his employment with MPC. In fact, O'Sullivan explicitly incorporates the

8

allegation that he was constructively discharged, as stated in his Count I claim, into his CEPA and *Pierce* claims. (O'Sullivan Countercl. ¶¶ 16-26; Opp. Br. at 7, 12.) In doing so, he acknowledges that his claim of constructive discharge in Count I is not an independent cause of action, but is in fact a form of adverse employment action that should properly be considered in the Court's analysis of his CEPA and *Pierce* claims. *See, e.g.*, *DeWelt v. Measurement Specialties, Inc.*, No. 02-cv-3431, 2007 WL 542234, at *5 (D.N.J. Feb. 16, 2007) (finding that "other adverse employment action taken against an employee, as contemplated by [CEPA] includes constructive discharge" (internal quotations omitted)). As such, O'Sullivan's claim in Count I is duplicative of his claims in Counts II and III, and the Court therefore will dismiss Count I of O'Sullivan's Counterclaim, with prejudice.

The remaining claims arise under state law, and require this Court to determine which state's law should be applied. In this diversity case, this Court adopts the choice-of-law rules of the forum state, New Jersey, to determine the controlling law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). New Jersey has adopted the "most significant relationship" two-part choice-of-law test for tort and fraud claims, as explained in the Restatement (Second) of Conflict of Laws. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). In applying this test, courts first determine whether an actual conflict exists between the laws of the relevant states; if there is no conflict, the analysis ends and the court applies the law of the forum state. *Id.* Here, CEPA gives protection to New Jersey employees against retaliation for refusing to participate in an activity that may be a violation of law, regulation, or public policy. N.J.S.A. § 34:19-3. Furthermore, *Pierce* claims arise under New Jersey employment law. *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980). For the purpose of determining whether the Court has adequate

9

information before it to make a choice-of-law decision at this time, the Court will assume that an actual conflict of laws exists on these claims.

If an actual conflict of laws exists, courts then determine which state has the most significant relationship to the case and parties, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010); *see also Camp Jaycee*, 197 N.J. at 461. Choice-of-law determinations are typically made on an issue-by-issue basis. *See, e.g., Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012). Restatement § 148 distinguishes between (1) instances where the alleged misrepresentations were made and received and a plaintiff's reliance all occurred in the same jurisdiction, and (2) instances where the misrepresentations and reliance were in different jurisdictions:[1]

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

---

[1] The Third Circuit has held that "[c]onstruing the location to which a representation is 'directed' to be the same in which one is 'made'—as opposed to the location from which the representation emanated—would render meaningless the Restatement drafters' careful distinction between 'made' and 'received.'" *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013).

>    (b) the place where the plaintiff received the representations,
>
>    (c) the place where the defendant made the representations,
>
>    (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
>    (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
>    (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (last updated Oct. 2015). In this step, courts also examine the more general choice-of-law factors, as stated in § 6 of the Restatement and as interpreted by the New Jersey Supreme Court in *Camp Jaycee*: (1) interests of interstate comity; (2) interests of the parties; (3) interests underlying the field of law; (4) interests of judicial administration; and (5) competing interests of the states. *Camp Jaycee*, 197 N.J. at 147 (citing Restatement (Second) of Conflict of Laws § 6). This analysis is fact-intensive, and here the Court finds it would be premature to determine which state has the most significant interest in each of O'Sullivan's counterclaims, prior to sufficient development of the factual record. *See, e.g.*, *Krys v. Aaron*, 106 F. Supp. 3d 472, 481 (D.N.J. 2015) (stating that "the factual inquiry necessary for a choice of law analysis often proves 'inappropriate or impossible' at the motion to dismiss stage 'when little or no discovery has taken place.'" (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 700-01 (D.N.J. 2011) (citation omitted) (citing cases that have determined that a choice-of-law analysis is premature at the motion to dismiss stage)). To properly weigh the contacts of each potentially relevant state, the Court will benefit from evidence related to the location of the alleged misrepresentations, which presumably will become available in the course of discovery. This Court will defer its choice-of-law decision, and will

thus deny MPC's motion to dismiss O'Sullivan's CEPA and *Pierce* counterclaims, without prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny MPC's motion for partial summary judgment, without prejudice. The Court will grant MPC's motion to dismiss Count I of O'Sullivan's Counterclaims with prejudice, but will deny the motion to dismiss as to the CEPA and *Pierce* Counterclaims (Counts II and III), without prejudice. An appropriate Order will be filed herewith.

      s/ Stanley R. Chesler  
      STANLEY R. CHESLER  
      United States District Judge

Dated: March 11, 2016